# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**ROBERT DAVIS,**                      Case No. 20-cv-00768
      Plaintiff**,**

                                   **Hon. JANET NEFF**

v.

**JOCELYN BENSON**, in her official and individual capacities as the
Detroit City Clerk, and
**MARIO MORROW,** an individual**,**
           Defendants.
_____/

**ANDREW A. PATERSON (P18690)**
Attorney for Plaintiff
2893 E. Eisenhower Pkwy
Ann Arbor, MI 48108
(248) 568-9712
aap43@outlook.com

_____/

## SECOND AMENDED COMPLAINT AND JURY DEMAND

**NOW COMES** Plaintiff, ROBERT DAVIS[1], by and through his

attorney, ANDREW A. PATERSON, and for his Second Amended

Complaint and Jury Demand ("Second Amended Complaint")[2], states as

follows:

_____

[1] Prior to filing the instant action, Plaintiff Robert Davis advised counsel that he *may* want to proceed *in propria persona*.

[2] In accordance with the Court's September 23, 2020 Order (ECF No. 20), Plaintiff timely files this second amended complaint.

## I.    NATURE OF PLAINTIFF'S CLAIMS

1. Plaintiff's claims are brought pursuant to 42 U.S.C. § 1983; 28
   U.S.C. §§ 1331, 1337, 1343, and 1367; and, the Declaratory
   Judgment Act, 28 U.S.C. § 2201, *et. seq.*

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction over Plaintiff's claims pursuant to 42
   U.S.C. 1983; 28 U.S.C. §§ 1331, 1332, 1337, 1343, and 1367.

3. This Court also has jurisdiction to render and issue a declaratory
   judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §
   2201, *et. seq.*

4. Venue is proper in the Western District of Michigan under 28
   U.S.C. § 1391(b)(1). Under 28 U.S.C. § 1391(b)(1), venue is proper
   in "a judicial district in which any defendant resides, if all
   defendants are residents of the State in which the district is
   located."

5. Public officials sued in their official capacity "reside" in the county
   where they perform their official duties. *See O'Neill v. Battisti*,
   472 F.2d 789, 791 (6th Cir. 1972).

6. Defendant Jocelyn Benson's principal office is in Lansing, MI, and Defendant Jocelyn Benson performs her official duties in Lansing, MI.

7. Lansing, MI is in the Western District of Michigan. Therefore, venue is proper within the Western District of Michigan under 28 U.S.C. § 1391(b)(1).[3]

8. Events giving rise to the causes of action plead and alleged herein occurred in the Western District of Michigan.

### III.  PARTIES

9. Plaintiff repeats, realleges and incorporates, the foregoing allegations, as though fully set forth and stated herein.

10.  Plaintiff, Robert Davis ("**Plaintiff Davis**" or "**Plaintiff**"), is a resident and registered voter of the City of Highland Park, County of Wayne, State of Michigan. Plaintiff Davis is also a State of Michigan employee and is a well-known political activist.

---

[3] Under 28 U.S.C. § 1391(b)(1) venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." The determination of the proper venue for a civil action in federal court is "generally governed by 28 U.S.C. 1391." *Atlantic Marine Const. Co. v U.S. District. Court for W.Dist. of Texas*, 571 U.S. 49, 55 (2013). "[T]he court must determine whether the case falls within one of the three categories set out in 1391(b). If it does, venue is proper[.]" *Id*. at 55.

11.     Defendant, Jocelyn Benson ("**Defendant Secretary of State**"), is the duly elected Secretary of State for the State of Michigan.  Defendant Secretary of State "the chief election officer of the state" with "supervisory control over local election officials in the performance of their duties under the provisions of" the Michigan Election Law, MCL 168.1 *et seq*. Mich. Comp. Laws §168.21.

12.     Defendant, Mario Morrow ("**Defendant Morrow**"), is a self-proclaimed media and political consultant that resides in the City of Detroit.

13.     An actual controversy exists between the Plaintiff and the named Defendants.


## CAUSES OF ACTION

### COUNT I
**Plaintiff Davis Was Denied Equal Protection Under The Law Under The "Class-of-One" Theory By Defendant Secretary of State When She Denied Plaintiff's Request To Recuse Herself From The Campaign Finance Investigation Requested By Defendant Morrow.**

14.     Plaintiff repeats, realleges and incorporates, the foregoing allegations, as though fully set forth and stated herein.

15.     This claim is brought by Plaintiff Davis against Defendant Secretary of State, in her official and individual capacities, pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et. seq.*

16.     For this count/claim, Plaintiff seeks an award of damages against the Defendant Secretary of State in her individual capacity.

17.     On or about May 10, 2019, Plaintiff Davis received at his home address via U.S. Mail a large envelope from the Defendant Secretary of State.

18.     Inside of the large envelope was a letter from the Defendant Secretary of State dated May 6, 2019 informing Plaintiff Davis that the "Department of State (Department) received a formal complaint filed by Mario Morrow against you, alleging that you violated the Michigan Campaign Finance."

19.     Attached to the Defendant Secretary of State's May 6, 2019 letter were copies of Defendant Morrow's formal complaint dated May 1, 2019 and exhibits referenced in Defendant Morrow's formal complaint.

20.     Defendant Morrow's May 1, 2019 formal complaint falsely alleges that Plaintiff Davis failed to file a statement of organization in violation of the Michigan Campaign Finance Act.

21.     Specifically, Defendant Morrow's May 1, 2019 formal complaint falsely alleges that Plaintiff Davis "received over $50,000 in financial commitments from Detroit area businessmen to recall Mayor Duggan" and that Plaintiff Davis was "coordinating with Detroit businessman Robert Carmack" relating to Plaintiff Davis recall effort of Detroit Mayor Mike Duggan.

22.     In accordance with the Michigan Campaign Finance Act, Plaintiff Davis, through counsel, responded to Defendant Morrow's false and defamatory allegations.

23.     On June 3, 2019, Plaintiff Davis, through counsel, filed a response with the Defendant Secretary of State refuting Defendant Morrow's baseless and meritless claims and allegations.

24.     On or about June 20, 2019, Defendant Morrow filed a rebuttal statement to Plaintiff Davis' response refuting Defendant Morrow's baseless and meritless claims and allegations.

25.    In later part of August 2019, Defendant Morrow appeared on WXYZ Channel 7 news and represented himself as a spokesman and/or representative for Detroit Mayor Mike Duggan and/or the secretive nonprofit organization associated with Detroit Mayor Mike Duggan's alleged mistress, Dr. Sonia Hasan.

26.    Defendant Morrow during the Channel 7 Action News telecast was defending the actions of the Detroit Mayor Mike Duggan and the City of Detroit's donations make to Dr. Sonia Hasan's Make Your Date organization.

27.    On September 4, 2019, Plaintiff Davis, through counsel, requested the Defendant Secretary of State recuse herself from deciding Defendant Morrow's formal complaint because Defendant Secretary of State's husband, Ryan Friedrichs, at the time, was a high-level appointee of Detroit Mayor Mike Duggan and was closely tied to the controversy surrounding the alleged improper payments to Detroit Mayor Duggan's alleged mistress' nonprofit organization.

28.    Plaintiff Davis requested the Defendant Secretary of State to recuse herself because Defendant Morrow, appeared on

Channel 7 Action News and represented that he was the spokesman for Mayor Mike Duggan's and his alleged mistress' secretive nonprofit organization.

29.     This development was problematic considering the Defendant Secretary of State's husband, Ryan Friedrichs, at the time, was an appointee of Detroit Mayor Mike Duggan. In fact, Mr. Friedrichs is a named defendant in the lawsuit filed by a former city employee who alleged Mr. Friedrichs was involved in a cover-up to hide funds funneled to Mayor Mike Duggan's mistress, Dr. Sonia  Hasan, and her nonprofit organization.

30.     Considering Defendant Morrow's frivolous complaint was concerning the purported recall effort of Detroit Mayor Mike Duggan, which cited his alleged affair with Dr. Sonia Hasan, Plaintiff Davis strongly believe the Defendant Secretary of State could not fairly adjudicate Defendant Morrow's frivolous complaint against the

Plaintiff and must immediately recuse herself and her office.

31.    On October 22, 2019, the Defendant Secretary of State, through counsel, issued a response denying Plaintiff Davis' request for the Defendant Secretary of State to recuse herself.

32.    Defendant Secretary of State refused to recuse herself because the Defendant Secretary of State believed Defendant Morrow's formal complaint did not directly involve the Defendant Secretary of State, a member of her immediate family, or a campaign or committee with which the Defendant Secretary of State was connected to.

33.    Based on the foregoing, Plaintiff Davis strongly believes the Defendant Secretary of State's husband, Mr. Friedrichs, is directly involved in Defendant Morrow filing the frivolous complaint against Plaintiff Davis.

34.    Defendant Secretary of State has personal animus and dislike for Plaintiff Davis.

35.    In 2013, Defendant Secretary of State and Plaintiff Davis appeared on Fox 2 News' Let It Rip, to discuss the legal issues

surrounding then candidate, Mike Duggan, who was removed
from the ballot as a candidate for the elective office of Mayor of the
City of Detroit.

36.     Defendant Secretary of State and her husband, were staunch
supporters of Mike Duggan being elected Mayor of the City of
Detroit, as evidenced by the fact Mayor Mike Duggan appointed
Defendant Secretary of State's husband to a high-level position
after being elected.

37.     Defendant Secretary of State has expressed publicly her
dislike for Plaintiff Davis.

38.     Similarly, Plaintiff Davis has expressed his dislike publicly
for Defendant Secretary of State.

39.     Defendant Secretary of State did not like the fact how
Plaintiff Davis publicly associated her husband to the public
controversy surrounding Mayor Duggan and his alleged mistress,
Dr. Sonia Hasan.

40.     Defendant Secretary of State has personal animus and
dislike for Plaintiff Davis because of his association with Detroi
Businessman Robert Carmack.

41.    Moreover, Defendant Secretary of State has personal animus and dislike for Plaintiff Davis because Plaintiff Davis filed a formal request with the Wayne County Circuit Court requesting the empaneling of a one-man grand juror to investigate whether Defendant Secretary of State's husband, committed any felonies or misdemeanors while assisting the Detroit Mayor Mike Duggan to cover up the questionable donations the city made to Mayor Duggan's alleged mistress' nonprofit organization.

42.    Since the filing of Defendant Morrow's frivolous complaint, it shall be noted that Defendant Secretary of State's husband, Mr. Friedrich, was named in search warrants issued by the Michigan Attorney General for records pertaining to the donations the City of Detroit made to the Dr. Sonia Hasan's nonprofit organization, as well as the email deletion controversy regarding said donations.

43.    Since the filing of Defendant Morrow's frivolous complaint, it shall be noted that Defendant Secretary of State's husband, Mr. Friedrich, has since resigned his position with the City of Detroit.

44.     Additionally, Defendant Secretary of State does not like the fact Plaintiff Davis publicly discredited Defendant Secretary of State's lack of knowledge of Michigan Election Law.

45.     The animus and dislike Defendant Secretary of State has expressed towards Plaintiff Davis contributed to and caused Defendant Secretary of State to deny Plaintiff Davis' request for the Defendant Secretary of State from adjudicating Defendant Morrow's formal complaint against Plaintiff Davis.

46.     Defendant Secretary of State has honored other requests for her to recuse herself when members of her immediate family have been implicated or involved in a matter.

47.     Defendant Secretary of State treated Plaintiff Davis' request differently due to the personal animus and dislike Defendant Secretary of State has for Plaintiff Davis.

**WHEREFORE**, Plaintiff Davis requests this Court enters judgment against Defendant Secretary of State as follows:

   a. compensatory damages in whatever amount above $75,000.00 Plaintiffs are found to be entitled, which shall be assessed and awarded against the Defendant Secretary of State in her individual capacity;

b. an award of exemplary and punitive damages against the Defendant Secretary of State in her individual capacity;

c. an award of interest, costs and reasonable attorney fees under 42 USC §1988;

d. a declaration that Plaintiff Davis was denied equal protection under the law under the "class-of-one" theory by the Defendant Secretary of State; and

e. an order awarding whatever other equitable relief appears appropriate at the time of final judgment.

## COUNT II
## Defendant Secretary of State Has Retaliated Against Plaintiff Davis For Exercising His First Amendment Rights By Seeking and Attempting To Have Plaintiff Davis Terminated From His State Employment.

48.    Plaintiff repeats, realleges and incorporates, the foregoing allegations, as though fully set forth and stated herein.

49.    This claim is brought by Plaintiff Davis against Defendant Secretary of State, in her official and individual capacities, pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et. seq*.

50.    For this count/claim, Plaintiff Davis seeks an award of damages against the Defendant Secretary of State in her individual capacity.

51.     Since May 2020, Plaintiff Davis has filed a couple of meritorious state-court lawsuits against Defendant Secretary of State for purportedly violating various provisions of Michigan Election Law.

52.     In May/June 2020, Plaintiff Davis filed an action in the Michigan Court of Claims against the Defendant Secretary of State after the Defendant Secretary of State unlawfully mailed unsolicited absentee voter applications to Plaintiff Davis and other registered voters in the State of Michigan.

53.     After Plaintiff Davis' Court of Claims action was filed, Plaintiff Davis was quoted in various published media articles criticizing the Defendant Secretary of State for her unlawful actions of mailing unsolicited absentee voter applications to the Plaintiff and other registered voters in the State of Michigan.

54.     After Plaintiff Davis' Court of Claims action was filed, Defendant Secretary of State engaged in private, confidential conversations with high-level elected officials and/or state employees regarding Plaintiff Davis' Court of Claims lawsuit.

55.     Defendant Secretary of State engaged in private, confidential conversations to with high-level elected officials and/or state employees regarding ways to apply pressure to Plaintiff Davis to drop and/or dismiss Plaintiff's lawsuit.

56.     After  Plaintiff Davis' Court of Claims action was filed, Defendant Secretary of State caused certain high level official(s) to contact Plaintiff Davis' boss, who is a well-known state legislator from the City of Detroit, to inquire why Plaintiff Davis was suing the Defendant Secretary of State over the mass mailing of unsolicited absentee voter applications and whether Plaintiff Davis' boss could have Plaintiff Davis dismiss the Court of Claims action against Defendant Secretary of State because the Defendant Secretary of State was concerned that an adverse ruling could ruing her efforts and reputation.

57.     Plaintiff Davis was contacted by his boss and was informed of the Defendant Secretary of State's efforts to have Plaintiff Davis fired and/or removed from his employment with the State of Michigan.

58.     Plaintiff Davis' boss explained to Plaintiff that having officials from the Defendant Secretary of State's office and/or other officials contact her about Plaintiff Davis' pending lawsuit against the Defendant Secretary of State was not a "good look" for the office.

59.     The Defendant Secretary of State and her staff knows the state legislator that Plaintiff Davis is employed by.

60.     The Defendant Secretary of State knows Plaintiff Davis' boss, who is very well-known state legislator from the City of Detroit, very well.

61.     Defendant Secretary of State's actions of trying to get Plaintiff terminated from his employment were in retaliation for the Plaintiff filing the meritorious state-court action in the Michigan Court of Claims challenging the Defendant Secretary of State's unlawful actions of mailing unsolicited absentee voter applications.

62.     Defendant Secretary of State's actions of trying to get Plaintiff terminated from his employment were in retaliation for Plaintiff making critical statements and/or comments in the media about the Defendant Secretary of State's actions, which Plaintiff characterized as unlawful and illegal.

**WHEREFORE**, Plaintiff Davis requests this Court enters judgment against Defendant Secretary of State as follows:

a. compensatory damages in whatever amount above $75,000.00 Plaintiffs are found to be entitled, which shall be assessed against the Defendant Secretary of State in her individual capacity;

b. an award of exemplary and punitive damages against the Defendant Secretary of State in her individual capacity;

c. an award of interest, costs and reasonable attorney fees under 42 USC §1988;

d. a declaration that Defendant Secretary of State retaliated against Plaintiff Davis for exercising his First Amendment rights by seeking to have Plaintiff terminated and/or removed from his employment; and

e. an order awarding whatever other equitable relief appears appropriate at the time of final judgment.

## COUNT III
**Defendant Morrow Conspired With Defendant Secretary of State, Defendant Secretary of State's Husband, and Detroit Mayor Duggan To Retaliate Against Plaintiff Davis For Exercising His First Amendment Rights By Filing A Frivolous Complaint With Defendant Secretary of State and Making Defamatory Statements To Media About Plaintiff.**

63.     Plaintiff repeats, realleges and incorporates, the foregoing allegations, as though fully set forth and stated herein.

64.     This claim is brought by Plaintiff Davis against Defendant Morrow for conspiring with Defendant Secretary of State, Mr. Ryan Friedrich, and Detroit Mayor Mike Duggan to retaliate

against Plaintiff for exercising his First Amendment rights,
pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act,
28 U.S.C. § 2201, *et. seq.*

65.     On April 22, 2019, Plaintiff Davis filed with the Wayne
County Election Commission a petition seeking to recall Detroit
Mayor Mike Duggan.

66.     Plaintiff Davis' recall petition cited the ongoing criminal
investigation into whether Mayor Mike Duggan and the City of
Detroit gave favor to a nonprofit dedicated to preventing
premature births and the mayor's alleged ties to Dr. Sonia Hasan
who heads it.

67.     Plaintiff Davis also prepared and drafted the wording for the
recall petition submitted on the same day by Detroit resident
Brenda Hill.

68.     In May 2019, the Wayne County Election Commission
convened to determine whether the wording contained on the
recall petitions submitted by Plaintiff Davis and Brenda Hill were
of sufficient clarity in accordance with Michigan Election Law.

69.     During the May 2019 meeting of the Wayne County Election Commission, Plaintiff Davis presented arguments on behalf of himself and Brenda Hill.

70.     The Wayne County Election Commission approved the wording for the recall petition submitted by Brenda Hill, but denied the recall petition submitted by Plaintiff Davis.

71.     Shortly after the May 2019 meeting of the Wayne County Election Commission, Plaintiff Davis was contacted by Christine Ferretti, a reporter for the Detroit News, about Defendant Morrow's accusations and allegations that Plaintiff Davis violated Michigan Election Law.

72.     Specifically, in a May 2, 2019 Detroit News article, Defendant Morrow is quoted as stating the following: "It doesn't seem above board to me as a political observer and a political watchdog. I have no problem with people calling for recalls or filing complaints, but if you are going to hold somebody to a higher standard, you better make sure that you are holding yourself to a high standard as well."[4]

---

[4]     *See*    https://www.detroitnews.com/story/news/local/detroit-city/2019/05/02/recall-petitions-against-duggan-can-move-forward/3651162002/

73.     Defendant Morrow then filed the frivolous complaint with the Defendant Secretary of State falsely alleging Plaintiff violated Michigan's Campaign Finance Act and Defendant Morrow's complaint further requested the Defendant Secretary of State to have Plaintiff charged with a misdemeanor.

74.     Defendant Morrow's complaint filed with the Defendant Secretary of State constitutes adverse action because Defendant Morrow seeks to have Plaintiff criminally prosecuted by the Michigan Attorney General.

75.     Defendant Morrow had knowledge of the recall petitions Plaintiff Davis filed with the Wayne County Election Commission as a result of the private conversations Defendant Morrow had with Detroit Mayor Mike Duggan, Defendant Secretary of State and Mr. Friedrichs.

76.     Defendant Morrow discussed with Mayor Mike Duggan, and Mr. Friedrichs ways to discredit Plaintiff Davis' attempt to have Mayor Mike Duggan recalled.

77.     Defendant Morrow had secret and private conversations with Mayor Mike Duggan, Mr. Friedrichs and Defendant

Secretary of State about filing a complaint with the Defendant

Secretary of State alleging false allegations against Plaintiff Davis

for purportedly violating Michigan's Campaign Finance Act.

78.     Defendant Morrow, Mayor Mike Duggan, Mr. Friedrichs and

Defendant Secretary of State all agreed that Defendant Morrow

would file a complaint with the Defendant Secretary of State

alleging Plaintiff violated various provisions of Michigan's

Campaign Finance Act and that Defendant Morrow's complaint

would also request for the Defendant Secretary of State to refer

Plaintiff Davis to the Michigan Attorney General for criminal

prosecution.

79.     Defendant Secretary of State then agreed to commence an

investigation into Defendant Morrow's allegations against

Plaintiff Davis.

80.     Defendant Morrow and Mike Duggan then agreed that

Defendant Morrow would be retained to make public comments to

the press on behalf of Dr. Sonia Hasan's nonprofit organizations.

81.     Defendant Morrow and Mike Duggan also secretly agreed

that Defendant Morrow would make public statements about

Plaintiff Davis possibly committing a crime by violating certain provisions of Michigan Election Law.

82.     All of the conversations Defendant Morrow had with Defendant Secretary of State, Mayor Mike Duggan, and Mr. Friedrichs were private and confidential.

83.     Defendant Morrow also had secret and private conversations with employees from the Defendant Secretary of State's office about filing a complaint against Plaintiff Davis.

84.     Defendant Morrow executed the plan secretly developed by filing the frivolous complaint with the Defendant Secretary of State and by making false and defamatory remarks to the reporter from the Detroit News about Plaintiff Davis violating the Michigan Campaign Finance Act and accusing Plaintiff Davis of committing a crime.

85.     Detroit Mayor Mike Duggan was acting in his official capacity as the duly elected Mayor of the City of Detroit when he had private conversations with Defendant Morrow about Plaintiff Davis, Dr. Sonia Hassan and the filing of the frivolous complaint with the Defendant Secretary of State against Plaintiff Davis.

86.     Defendant Secretary of State was acting in her official capacity as the duly elected Secretary of State when she had private conversations with Defendant Morrow.

87.     Defendant Secretary of State's husband, Mr. Friedrichs, was acting in his official capacity as a high-level appointee of Detroit Mayor Mike Duggan when he had private conversations with Defendant Morrow.

88.     Defendant Morrow conspired with state and local officials to retaliate against Plaintiff Davis for exercising his First Amendment rights by filing the frivolous complaint with Defendant Secretary of State and by making false and defamatory remarks to the reporter from the Detroit News about Plaintiff Davis violating the Michigan Campaign Finance Act and accusing Plaintiff Davis of committing a crime.

89.     Defendant Morrow's filed complaint requesting the Defendant Secretary of State to refer Plaintiff to the Michigan Attorney General to be criminally prosecuted, constitutes adverse action against the Plaintiff.

90.     Because Defendant Morrow is politically connected, and the

Defendant Secretary of State has publicly expressed animus and

ill will towards the Plaintiff, Plaintiff fears of being unjustly

referred by the Defendant Secretary of State to the Michigan

Attorney General for criminal prosecution.

**WHEREFORE**, Plaintiff Davis requests this Court enters

judgment against Defendant Morrow as follows:

  a. compensatory damages in whatever amount above
     $75,000.00 Plaintiffs are found to be entitled;
  b. an award of exemplary and punitive damages;
  c. an award of interest, costs and reasonable attorney fees
     under 42 USC §1988;
  d. a declaration that Defendant Morrow conspired with
     state and local officials to retaliate against Plaintiff
     Davis for exercising his First Amendment rights; and
  e. an order awarding whatever other equitable relief
     appears appropriate at the time of final judgment.

## COUNT IV
### Mich. Comp. Laws §§169.204(1) And 169.206(1), On Their Face And As Applied To Plaintiff Davis Are Unconstitutional For They Violate Plaintiff's First Amendment Rights.

91.     Plaintiff repeats, realleges and incorporates, the foregoing

allegations, as though fully set forth and stated herein.

92.     This claim is brought by Plaintiff Davis against Defendant

Secretary of State, in her official and individual capacities,

pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et. seq.*

93.     For this count/claim, Plaintiff seeks an award of damages against the Defendant Secretary of State in her individual capacity.

94.     In a May 2019 Detroit News' article, the following was reported: "Davis contends that he's complied with the rules, since no donations have been accepted yet, only 'verbal commitments.'"

95.     Notably, the May 2019 Detroit News' article did not identify any specific "businessmen" Plaintiff Davis purportedly received "verbal commitments" from.

96.     Based upon this Detroit News' article, Defendant Morrow filed a frivolous complaint with the Defendant Secretary of State alleging Plaintiff Davis violated the Michigan Campaign Finance Act by failing to file a committee because Plaintiff Davis had received a "contribution" and/or made an "expenditure" in excess of $50,000.

97.     Defendant Morrow cites the definitions of the terms "contribution" and "expenditure" set forth in Mich. Comp. Laws §§169.204(1) and 169.206(1).

98.     The definitions of the terms "contribution" and "expenditure" set forth in Mich. Comp. Laws §§169.204(1) and 169.206(1) on their face and as applied to Plaintiff Davis are unconstitutional and overly broad for they violate Plaintiff Davis' First Amendment rights.

99.     Defendant Morrow's complaint seeks to have Defendant Secretary of State punish Plaintiff for the exercise of core political speech to reporters from the Detroit News and Detroit Free Press.

100.    Defendant Secretary of State has initiated an investigation based upon Plaintiff exercising his right to engage in core political speech to reporters from the Detroit News and Detroit Free Press.

101.    The application of the terms "contribution" and "expenditure" set forth in Mich. Comp. Laws §§169.204(1) and 169.206(1) as applied to Plaintiff Davis are unconstitutional for they punish Plaintiff Davis for exercising his right to engage in core political speech.

102.    The application of the terms "contribution" and "expenditure" set forth in Mich. Comp. Laws §§169.204(1) and 169.206(1) on their

face are unconstitutional for they punish Plaintiff Davis for exercising his right to engage in core political speech.

103.    Defendant Morrow filed a complaint without first determining whether or not the statements made in the articles printed and published in the Detroit News and Detroit Free Press were indeed factual or false.

104.    Defendant Secretary of State initiated an investigation without fist determining whether or not the statements made in articles printed and published in the Detroit News and Detroit Free Press were indeed factual or false.

105.    The statements attributed to Plaintiff Davis in the articles written in the Detroit News and Detroit Free Press as having received "verbal commitments" from businessmen were false.

106.    Plaintiff Davis did not receive any "verbal commitments" from any businessmen to support Plaintiff Davis' and Brenda Hill's recall campaign against Detroit Mayor Duggan.

107.    Plaintiff Davis was exercising his constitutional right to engage in core political speech when Plaintiff made the false statements/comments to reporters from the Detroit News and

Detroit Free Press about having received "verbal commitments" from unnamed and/or unidentified businessmen.

108.     Plaintiff Davis, in exercising his constitutional right to engage in core political speech, deliberately told the reporters from the Detroit News and Detroit Free Press a falsehood in an effort to scare, and to get the attention and to get a reaction out of Detroit Mayor Duggan and his loyal supporters, which include both of the named Defendants.

109.     False or untruthful speech in the context of core political speech is protected by the First Amendment.

110.     Plaintiff's false statements/comments made to reporters from the Detroit News and Detroit Free Press were made in the context of Plaintiff exercising his First Amendment right to engage in core political speech.

**WHEREFORE**, Plaintiff Davis requests this Court enters judgment against Defendant Secretary of State as follows:

 a. compensatory damages in whatever amount above $75,000.00 Plaintiffs are found to be entitled, which shall be awarded and assessed against the Defendant Secretary of State in her individual capacity;

b. an award of exemplary and punitive damages against the Defendant Secretary of State in her individual capacity;

c. an award of interest, costs and reasonable attorney fees under 42 USC §1988;

d. a declaration that Mich. Comp. Laws §§169.204(1) and 169.206(1) as applied to Plaintiff Davis is unconstitutional for they violate Plaintiff's First Amendment rights; and

e. a declaration that Mich. Comp. Laws §§169.204(1) and 169.206(1) on their face are unconstitutional for they violate Plaintiff's First Amendment rights;

f. injunctive relief enjoining the Defendant Secretary of State from enforcing or applying the provisions of Mich. Comp. Laws §§169.204(1) and 169.206(1).

g. an order awarding whatever other equitable relief appears appropriate at the time of final judgment.

## COUNT V
## Mich. Comp. Laws §§169.204(1) And 169.206(1) Are Unconstitutionally Void For Vagueness.

111.    Plaintiff repeats, realleges and incorporates, the foregoing allegations, as though fully set forth and stated herein.

112.    This claim is brought by Plaintiff Davis against Defendant Secretary of State, in her official and individual capacities, pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et. seq.*

113.    For this count/claim, Plaintiff seeks an award of damages against the Defendant Secretary of State in her individual capacity.

114.    The definitions of the terms "contribution" and "expenditure" as defined under the Michigan Campaign Finance Act are vague because its prohibitions are not clearly defined.

115.    The definition of the term "contribution" as it is defined under Mich.Comp.Laws §169.204(1) is vague because its prohibitions are not clearly defined.

116.    The definition of the term "expenditure" as it is defined under Mich.Comp.Laws §169.206(1) is vague because its prohibitions are not clearly defined.

117.    Specifically, the definition of the term "expenditure" as it is defined under Mich.Comp.Laws §169.206(1) did not put Plaintiff on notice that a false statement relative to an individual's promise to make a donation was an actual "expenditure" under the Michigan Campaign Finance Act.

118.    It is unclear under the definition of the term "expenditure" whether a person's reliance on a false statement made by a potential donor truly constitutes an actual "expenditure" under the Michigan Campaign Finance Act.

119.     This ambiguity and uncertainly in the definition of the term "expenditure" under Michigan Campaign Finance Act has led to an arbitrary and discriminatory enforcement of the Michigan Campaign Finance Act against the Plaintiff by the Defendants.

120.     Mich.Comp.Laws §§169.204 and 169.206 do not provide the Defendant Secretary of State with clear standards guiding the discretion of the Defendant Secretary of State in enforcing the Michigan Campaign Finance Act.

121.     Under the Michigan Campaign Finance Act, the Defendant Secretary of State is statutorily empowered to enforce the provisions of the Michigan Campaign Finance Act.

122.     Mich.Comp.Laws §§169.204 and 169.206 and the Michigan Campaign Finance Act give the Defendant Secretary of State unbridled discretion to investigate Plaintiff Davis for an unfounded violation of Michigan Campaign Finance Act, which is impermissible.

123.     The vague provisions of the Michigan Campaign Finance Act, which defines the terms "contribution" and "expenditure" have caused Plaintiff severe harm because Plaintiff has been punished

for exercising his First Amendment right to engage in core political speech by making false statements/comments to the media about a political campaign to recall the Mayor of the City of Detroit.

124.    Plaintiff, after reading the definitions of the terms "contribution" and "expenditure" as those terms are defined under Mich.Comp.Laws §§169.204 and 169.206, was **not** of the belief that Plaintiff would be in violation the Michigan Campaign Finance Act by exercising his First Amendment right to engage in core political speech by making false statements/comments to the media about a political campaign to recall the Mayor of the City of Detroit.

125.    Mich.Comp.Laws §§169.204 and 169.206 mislead Plaintiff into thinking and believing Plaintiff's conduct was not proscribed and/or prohibited by the Michigan Campaign Finance Act.

**WHEREFORE**, Plaintiff Davis requests this Court enters judgment against Defendant Secretary of State as follows:

a. compensatory damages in whatever amount above $75,000.00 Plaintiffs are found to be entitled, which shall be awarded and assessed against the Defendant Secretary of State in her individual capacity;
b. an award of exemplary and punitive damages against the Defendant Secretary of State in her individual capacity;

c. an award of interest, costs and reasonable attorney fees under 42 USC §1988;

d. a declaration that Mich. Comp. Laws §§169.204(1) and 169.206(1) are unconstitutionally void for vagueness;

e. injunctive relief enjoining the Defendant Secretary of State from enforcing or applying the provisions of Mich. Comp. Laws §§169.204(1) and 169.206(1); and

f. an order awarding whatever other equitable relief appears appropriate at the time of final judgment.

## COUNT VI
**State-Law Claim- Defendant Morrow Defamed Plaintiff Davis' Character In September 2019 At Teresa's Place and In June/July 2020 Private Conversations With Wayne County Prosecutor Kym Worthy and High-Level Appointees.**

126. Plaintiff repeats, realleges and incorporates, the foregoing allegations, as though fully set forth and stated herein.

127. This state-law claim is brought by Plaintiff Davis against Defendant Morrow for defamation under Michigan law.

128. This state-law claim is brought in accordance with Michigan's defamation statute, being Mich. Comp. Laws § 600.2911.

129. "The elements of a cause of action for defamation are (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm

(defamation per se) or the existence of special harm caused by the publication (defamation per quod)." *Burden v Elias Bros. Big Boy Restaurants*, 240 Mich.App. 723, 727-728; 643 NW2d 378, 381 (2000).

130.    "At common law, words charging the commission of a crime are defamatory per se, and hence, injury to the reputation of the person defamed is presumed to the extent that the failure to prove damages is not a ground for dismissal." *Burden v Elias Bros. Big Boy Restaurants*, 240 Mich.App., 723, 727-728; 643 NW2d 378, 381 (2000) (citations omitted).

131.    In the May 2019 Detroit News' article, Defendant Morrow falsely accused Plaintiff of committing a crime.

132.    Specifically, in a May 2, 2019 Detroit News article, Defendant Morrow is quoted as stating the following: "It doesn't seem above board to me as a political observer and a political watchdog. I have no problem with people calling for recalls or filing complaints, but if you are going to hold somebody to a higher standard, you better make sure that you are holding yourself to a high standard as well."

133.    Defendant Morrow's false and defamatory comments to the Detroit News' reporter were malicious and intentional.

134.    Plaintiff requested Defendant Morrow to retract his false and defamatory statements, but Defendant Morrow refused to do so.

135.    Plaintiff has been severely harmed and damaged by Defendant Morrow's false and defamatory statements.

136.    Defendant Morrow's false and defamatory statements caused Plaintiff to be questioned by his employer and almost caused Plaintiff to be reprimanded by his employer.

137.    Then in September 2019, while Plaintiff and Defendant Morrow were both in attendance at the popular neighborhood bar, Teresa's Place, on 6 mile and Schaefer in the City of Detroit, Defendant Morrow again defamed Plaintiff Davis' character by accusing Plaintiff of committing a crime while in the presence of other popular, well-established, and politically-connected patrons.

138.    Specifically, in September 2019, while Plaintiff and Defendant Morrow were both at Teresa's Place, Defendant Morrow expressed to some influential people in attendance that Plaintiff Davis committed a crime by violating Michigan's Campaign

Finance Act by failing to establish a committee for Plaintiff's recall campaign against Detroit Mayor Duggan, and that Plaintiff Davis would be prosecuted by the Michigan Attorney General for his alleged criminal conduct.

139.    Defendant Morrow further expressed to some of the influential and politically-connected people that were in attendance at Teresa's Place in September 2019 that Plaintiff Davis was a "crook", "phony", "a fraud", and "could not be trusted".

140.    These comments and/or statements made by Defendant Morrow while Plaintiff and Defendant Morrow were at Teresa's Place in September 2019 were false and defamatory.

141.    At the time Defendant Morrow made these statements to individuals while the Plaintiff and Defendant Morrow were both at Teresa's Place in September 2019, Defendant Morrow knew that his statements were false and they were made with malice.

142.    Upon hearing Defendant Morrow's disparaging comments, Plaintiff asked security at Teresa's Place to politely ask Defendant Morrow to leave from the area where Plaintiff was standing and socializing with other individuals.

143.    Defendant Morrow have stated publicly and privately that he dislikes and despise Plaintiff Davis.

144.    The individuals who heard Defendant Morrow's defamatory remarks about Plaintiff Davis questioned Plaintiff Davis about Defendant Morrow's statements and urged Plaintiff Davis to seek a public apology from Defendant Morrow if they were indeed false.

145.    Teresa's Place in Detroit is a well-known establishment that many of the City of Detroit's "movers and shakers" and "politically-connected" professionals socialize, have a drink, and fellowship.

146.    After this September 2019 public incident at Teresa's Place, some of the influential and politically-connected individuals Defendant Morrow made the defamatory remarks to, began to disassociate themselves with Plaintiff Davis out of fear Plaintiff Davis would soon be prosecuted by the Michigan Attorney General.

147.    In fact, since the filing of this lawsuit, Defendant Morrow has repeated these same defamatory remarks to Wayne County Prosecutor Kym Worthy, whom he serves as a political consultant for.

148.    In September 2020, Plaintiff Davis learned that Defendant Morrow defamed Plaintiff Davis' character again.

149.    This time, Plaintiff Davis has learned that sometime in June/July 2020, Defendant Morrow verbally expressed to Wayne County Prosecutor Kym Worthy and to some high-level appointees in her office that Plaintiff Davis violated the Michigan Campaign Finance Act by failing to create a committee for Plaintiff's recall campaign against Detroit Mayor Mike Duggan and that Plaintiff Davis should be prosecuted.

150.    Defendant Morrow's public statements about Plaintiff Davis are false and defamatory.

151.    Defendant Morrow's false and defamatory statements made about Plaintiff Davis have caused Plaintiff Davis harm to his good name and reputation.

**WHEREFORE**, Plaintiff Davis requests this Court enters judgment against Defendant Morrow as follows:

   a. compensatory damages in whatever amount above $75,000.00 Plaintiffs are found to be entitled;
   b. an award of exemplary and punitive damages;
   c. a declaration that Defendant Morrow defamed Plaintiff Davis' character under Michigan law, Mich. Comp.

Laws § 600.2911 while at Teresa's Place in September 2019;

d. a declaration that Defendant Morrow defamed Plaintiff Davis' character under Michigan law, Mich.Comp.Laws §600.2911 in June/July 2020 when Defendant Morrow spoke privately with Wayne County Prosecutor Kym Worthy and/or other high-level appointees in the Wayne County Prosecutor's Office about Plaintiff Davis.

e. an order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated: October 7, 2020                    Respectfully submitted,

_/s/ ANDREW A. PATERSON_
ANDREW   A.   PATERSON   (P18690)
Attorney for Plaintiff
2893 E. Eisenhower Pkwy
Ann Arbor, MI 48108
(248) 568-9712
aap43@outlook.com

## JURY DEMAND

Plaintiff, through counsel, respectfully demands a jury trial on all

issues triable to a jury.

Dated: October 7, 2020                    Respectfully submitted,
_/s/ ANDREW A. PATERSON_
ANDREW A. PATERSON (P18690)
Attorney for Plaintiff
2893 E. Eisenhower Pkwy
Ann Arbor, MI 48108
(248) 568-9712
aap43@outlook.com

## CERTIFICATE OF SERVICE

I, ANDREW A. PATERSON, certify that the foregoing document(s) was filed and served via the Court's electronic case filing and noticing system (ECF) this 7th day of October, 2020, which will automatically send notification of such filing to all attorneys and parties of record registered electronically.

Respectfully submitted,

/s/ ANDREW A. PATERSON
ANDREW A. PATERSON (P18690)
Attorney for Plaintiff