UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT DAVIS,

    Plaintiff,

v.

JOCELYN BENSON,
*in her official and individual capacities
as the Detroit City Clerk*, and
MARIO MORROW, *an individual*,

    Defendants.
_____/

Case No. 1:20-cv-768

HON. JANET T. NEFF

## OPINION AND ORDER

Pending before the Court are "Defendant Mario Morrow's Motion to Dismiss Plaintiff's Second Amended Complaint" (ECF No. 49) and "Defendant Secretary of State's Motion to Dismiss" (ECF No. 55). Plaintiff responded to both motions (ECF Nos. 51 & 58). Defendants replied to the responses (ECF Nos. 53 & 59). For the reasons that follow, Plaintiff's Second Amended Complaint (ECF No. 21) is dismissed.

### I.    BACKGROUND

Plaintiff initiated this action on August 14, 2020 with the filing of a complaint in this Court (ECF No. 1). A First Amended Complaint followed on August 18, 2020 (ECF No. 6). After Defendant Secretary of State and Defendant Mario Morrow filed pre-motion conference requests to file motions to dismiss (ECF Nos. 9 & 14), the Court granted Plaintiff the opportunity to file a second amended complaint (ECF No. 20), based on Plaintiff's response to the pre-motion conference requests (ECF Nos. 17, 18, & 19). Plaintiff filed a Second Amended Complaint (the

"Complaint") on October 7, 2020 (ECF No. 21).

Plaintiff identifies himself in the Complaint as "a State of Michigan employee and … a well-known political activist" (*id.* at PageID.89). He identifies Defendant Secretary of State Jocelyn Benson (hereinafter, "Defendant Secretary of State") as "the chief election officer" with "supervisory control over local election officials in the performance of their duties under Michigan Election Law" (*id.* at PageID.90, citing Mich. Comp. Laws § 168.21). He identifies Defendant Mario Morrow (hereinafter, "Defendant Morrow") as "a self-proclaimed media and political consultant that resides in the City of Detroit" (*id.*).

The Complaint, although not well-organized or very clear in its allegations, appears to relate to two events: On April 22, 2019, Plaintiff filed a recall petition with the Wayne County Election Commission, seeking to recall Detroit Mayor Mike Duggan (*id.* at PageID.104). Thereafter, in May 2019, Defendant Morrow filed a complaint with Defendant Secretary of State, alleging Plaintiff violated Michigan's Campaign Finance Act by receiving financial contributions for a recall and failing to file a statement of organization (*id.* at PageID.91-92, 106, 111).

Plaintiff recites an extensive history of past feuds and complaints allegedly connected to the Michigan Campaign Finance Act complaint before Defendant Secretary of State and the alleged counts of this Complaint before the Court.

Defendant states that "[s]ince May 2020, Plaintiff Davis has filed a couple of meritorious state-court lawsuits against Defendant Secretary of State for purportedly violating various provisions of Michigan Election Law," including "an action in the Michigan Court of Claims against the Defendant Secretary of State" for "unlawfully mail[ing] unsolicited absentee voter applications to Plaintiff Davis and other registered voters in the State of Michigan" (*id.* at PageID.100). Plaintiff also states that he filed "a formal request with the Wayne County Circuit

Court requesting the empaneling of a one-man grand juror [sic] to investigate whether Defendant Secretary of State's husband[1] committed, [sic] any felonies or misdemeanors while assisting the Detroit Mayor Mike Duggan to cover up the questionable donations the city made to Mayor Duggan's alleged mistress' nonprofit organization" (*id.* at PageID.97).

The Complaint appears to claim that these events motivated a variety of parties to enter into a conspiracy; allegedly, Defendant Morrow conspired with Defendant Secretary of State, the Secretary of State's husband, and Detroit Mayor Duggan to retaliate against Plaintiff by filing the frivolous Michigan Election Law complaint against Plaintiff, claiming Plaintiff violated the Michigan Campaign Finance Act and should be criminally prosecuted (*id.* at PageID.103-110).

Plaintiff also takes issue with the way the Michigan Election law complaint has been handled. According to the Complaint, Defendant Secretary of State provided Plaintiff with the opportunity to respond to Defendant Morrow's complaint (*id.* at PageID.91-92). In June 2019, Plaintiff submitted a rebuttal statement to Defendant Secretary of State regarding the alleged violations (*id.* at PageID.92). In September 2019, Plaintiff requested that Defendant Secretary of State recuse herself from deciding Defendant Morrow's complaint because of Defendant Secretary of State and her husband's alleged connections to Detroit Mayor Duggan (*id.* at PageID.96-98).

Plaintiff claims in the Complaint that Defendant Secretary of State refused to recuse herself because of personal animus to Plaintiff, even though Defendant Secretary of State issued a response through counsel, stating that the complaint did not directly involve Defendant Secretary of State or her immediate family (*id.* at PageID.95-98).

Specifically, the Complaint contains six counts:

---

[1] The Complaint identifies the Secretary of State's husband as Mr. Ryan Friedrichs and states that Mr. Friedrichs was a high-level appointee of Detroit Mayor Mike Duggan (ECF No. 21 at PageID.93).

3

Count I, alleging under 42 U.S.C. § 1983 that Plaintiff was denied equal protection by Defendant Secretary of State when she denied Plaintiff's request to recuse herself from the campaign finance investigation requested by Defendant Morrow (*id.* at PageID.90-99).

Count II, alleging under 42 U.S.C. § 1983 that Defendant Secretary of State retaliated against Plaintiff in seeking to have Plaintiff terminated from his state employment, after he exercised his First Amendment rights, in filing lawsuits against Defendant Secretary of State and making critical statements in the media about Defendant Secretary of State (*id.* at PageID.99-103).

Count III, alleging under 42 U.S.C. § 1983 that Defendant Morrow conspired with Defendant Secretary of State, the Secretary of State's husband, and Detroit Mayor Duggan to retaliate against Plaintiff by filing a frivolous complaint with Defendant Secretary of State and making defamatory statements in the media about Plaintiff after Plaintiff exercised his First Amendment rights in filing the recall petition (*id.* at PageID.103-110).

Count IV, alleging a claim against Defendant Secretary of State under 42 U.S.C. § 1983 that the definitions in Mich. Comp. Laws §§ 169.204(1) and 169.206(1) are unconstitutional and violate Plaintiff's First Amendment rights (*id.* at PageID.110-115).

Count V, alleging a claim against Defendant Secretary of State under 42 U.S.C. § 1983 that Mich. Comp. Laws §§ 169.204(1) and 169.206(1) should be struck down as unconstitutional because they are void for vagueness (*id.* at PageID.115-119).

Count VI, alleging that Defendant Morrow defamed Plaintiff in September 2019 at a bar in Detroit, when he accused Plaintiff of committing a crime while in the presence of other influential patrons (*id.* at PageID.119-122).  Plaintiff also alleges as part of this count that Defendant Morrow defamed Plaintiff in June/July private conversations with Wayne County Prosecutor Kym Worthy and some high-level appointees in her office (*id.* at PageID.119, 123-

124). Defendant Morrow allegedly expressed that Plaintiff violated the Michigan Campaign Finance by failing to create a committee for Plaintiff's recall campaign and Plaintiff should be prosecuted (*id.*).

In February 2021, the Court received the parties' briefing on Defendants' motions (ECF Nos. 49 & 55), pursuant to FED. R. CIV. P. 12(b)(6), for failure to state a plausible claim for relief.

## II. ANALYSIS

### A. Motion Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). "[T]he sufficiency of a complaint turns on its factual content, . . . requiring the plaintiff to plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing. . . . The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (internal quotations and citations omitted). "[T]he complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory. . . . Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) (citations omitted).

### B. Discussion

The Court reviews the motions to dismiss as to each count of the Complaint, Counts I-VI.

*Count I – Equal Protection Claim, Defendant Secretary of State's Refusal to Recuse Herself*

The Court will dismiss Count I for failure to state a claim.

5

Defendant Secretary of State's best argument is that Plaintiff fails to state an equal protection claim based on a class-of-one theory (ECF No. 56 at PageID.338). "[T]he Supreme Court has recognized that a 'class-of-one' may bring an equal protection claim where the plaintiff alleges that: (1) he or 'she has been intentionally treated differently from others similarly situated'; and (2) 'there is no rational basis for the difference in treatment.'" *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011) (quoting *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000)).

As Defendant Secretary of State notes, Plaintiff nowhere identifies in the Complaint other respondents in campaign finance proceedings who have requested the Secretary's recusal under similar factual circumstances and had those requests treated differently or granted (*id.* at PageID.338). Disparate treatment is a threshold element for making an equal protection claim and the failure to identify comparators is fatal. *See Ryan v. City of Detroit,* 698 F. App'x 272, 279, 282 (6th Cir. 2017); *Hall v. Callahan*, 727 F.3d 450, 457 (6th Cir. 2013).

The Complaint states only that "Defendant Secretary of State has honored other requests for her to recuse herself when members of her immediate family have been implicated or involved in a matter" (ECF No. 21 at PageID.98). These allegations are insufficient to satisfy the similarly situated requirement for a class-of-one claim at the pleading stage. *See, e.g.*, *Andrews, Tr. of Gloria M. Andrews Tr. Dated Apr. 23, 1998 v. City of Mentor,* 11 F.4th 462, 474 (6th Cir. 2021). The allegations in the Complaint are not well-pled and amount to "conclusory and unadorned assertions" because the Complaint fails to make a plausible allegation with sufficient facts that similarly situated individuals have not been subject to the same alleged treatment by Defendant. *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (granting motion to dismiss). In the absence of any plausible allegation of disparate treatment, the Complaint fails to state an equal protection claim. *Id.* at 380; *Ryan*, 698 F. App'x at 282. The Court grants the

motion to dismiss as to Count I, Plaintiff's equal protection claim.

*Count II – Retaliation Claim Against Defendant Secretary of State for Allegedly Seeking to Terminate Plaintiff from his State Employment, After Plaintiff Spoke Publicly and Filed Lawsuits Against Defendant Secretary of State*

The Court will dismiss Count II for failure to state a claim.

To establish a prima face case of First Amendment retaliation Plaintiff must plausibly allege that "(1) he engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by his protected conduct." *Dixon v. Univ. of Toledo*, 702 F.3d 269, 274 (6th Cir. 2012) (quoting *Scarbrough v. Morgan Cnty. Bd. of Educ.,* 470 F.3d 250, 255 (6th Cir. 2006)); *see Anders v. Cuevas*, 984 F.3d 1166, 1175 (6th Cir. 2021).

Defendant Secretary of State argues that Plaintiff cannot make out the second and third element of a First Amendment retaliation claim (ECF No. 56 at PageID.341). According to Defendant Secretary of State, Plaintiff cannot plausibly allege that the Secretary's purported actions chilled him from filing lawsuits or speaking publicly because Plaintiff has continued to file numerous lawsuits against the Secretary (*id.*; ECF No. 59 at PageID.391). Defendant Secretary of State also argues that Plaintiff has not alleged a causal connection between any protected activity of Plaintiff and pressure to have Plaintiff terminated because Plaintiff has not alleged when conversations between Defendant Secretary of State and Plaintiff's employer occurred (ECF No. 56 at PageID.340).

Plaintiff rebuts that "a credible threat to the nature and existence of one's ongoing employment" constitutes an adverse action (ECF No. 58 at PageID.370, quoting *Fritz v. Charter*

7

*Twp. of Comstock*, 592 F.3d 718, 728 (6th Cir. 2010)). Indeed, if Plaintiff alleged statements or conduct designed to threaten Plaintiff's economic livelihood, Plaintiff would have alleged an adverse action. *See id.* at 721-29. The Complaint states that "Plaintiff Davis was contacted by his boss and was informed of the Defendant Secretary of State's efforts to have Plaintiff Davis fired and/or removed from his employment with the State of Michigan" (ECF No. 21 at PageID.101). Those "efforts" are detailed as follows:

> After Plaintiff Davis' Court of Claims action was filed, Defendant Secretary of State caused certain high level official(s) to contact Plaintiff Davis' boss, who is a well-known state legislator from the City of Detroit, to inquire why Plaintiff Davis was suing the Defendant Secretary of State over the mass mailing of unsolicited absentee voter applications and whether Plaintiff Davis' boss could have Plaintiff Davis dismiss the Court of Claims action against Defendant Secretary of State because the Defendant Secretary of State was concerned that an adverse ruling could ruing [sic] her efforts and reputation.

(*id.*). Nowhere in the Complaint does Plaintiff identify statements or conduct of Defendant Secretary of State, which threatened Plaintiff's employment. *See id.* at 721, 726 (complaint must allege threats were made to raise a plausible claim of an adverse action). Because Plaintiff does not identify threats Defendant Secretary of State made, Plaintiff has not established a prima facie case of First Amendment retaliation. The Court grants the motion to dismiss as to Count II.

*Count III – Defendant Morrow Conspired with Defendant Secretary of State and Others to Retaliate Against Plaintiff for Exercising His First Amendment Rights*

    The Court will dismiss Count III for failure to state a claim.

    To establish a civil conspiracy claim Plaintiff must allege (1) a single plan existed; (2) that the conspirators shared in the general conspiratorial objective; (3) and that an overt act was committed in furtherance of the conspiracy that caused injury. *Memphis, Tennessee Area Loc., Am. Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 905-06 (6th Cir. 2004). Defendant Morrow maintains that Plaintiff has not specifically alleged the existence of a

8

conspiracy because a civil conspiracy's pleading requirements are strict and "conspiracy claims must be pled with some degree of specificity, . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983" (ECF No. 50 at PageID.219, quoting *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008)). Moreover, to sustain a civil conspiracy claim, "it is necessary to prove a separate, actionable tort." *Detroit Will Breathe v. City of Detroit*, 524 F. Supp. 3d 704, 709 (E.D. Mich. 2021) (motion to dismiss granted for failure to plead any specific allegations of any specific conspiracy to commit an unlawful act). Plaintiff responds that he has sufficiently alleged all three elements of a civil conspiracy (ECF No. 51 at PageID.278).

A civil conspiracy claim is only actionable if the claimant alleges the conspiracy produces an actionable act, i.e. a tort. *See id.* at 710; *Mead v. County of St. Joseph*, No. 1:06-CV-555, 2008 WL 441129, at *7 (W.D. Mich. Feb. 13, 2008) ("A plaintiff alleging civil conspiracy must allege more than a mere conspiracy; the plaintiff must allege a wrong resulting in damages;" "a civil conspiracy is not itself a cause of action").

The Complaint states that

> Defendant Morrow, Mayor Mike Duggan, Mr. Friedrichs and Defendant Secretary of State all agreed that Defendant Morrow would file a complaint with the Defendant Secretary of State alleging Plaintiff violated various provisions of Michigan's Campaign Finance Act and that Defendant Morrow's complaint would also request for the Defendant Secretary of State to refer Plaintiff Davis to the Michigan Attorney General for criminal prosecution.

(ECF No. 21 at PageID.107). Plaintiff does not allege that the conspiracy produced an actionable tort. Therefore, the Court grants the motion to dismiss as to Count III.

*Count IV – Defendant Secretary of State initiated an unconstitutional investigation in applying the terms "contribution" and "expenditure" in Mich. Comp. Laws §§ 169.204(1) and 169.206(1) against Plaintiff*

The Court will dismiss Count IV for failure to state a claim.

Plaintiff appears to allege in the Complaint that Defendant Secretary of State initiated an unconstitutional investigation against Plaintiff after he exercised his right to engage in core political speech when he told news sources he had verbal commitments of funds from an unidentified businessman for a recall campaign (*id.* at PageID.112-113). Plaintiff says that the investigation is unconstitutional because the definitions of "contribution" and "expenditure" in Mich. Comp. Laws §§ 169.204(1) and 169.206(1) are unconstitutional as applied to him and violate his First Amendment rights (*id.* at PageID.110, 112).[2]

Defendant Secretary of State argues that the Count must be dismissed because Plaintiff has not alleged that Defendant Secretary of State has or will take any enforcement action against Plaintiff: "any determination that a violation of the Act occurred could only be based on Plaintiff's actual receipt of a qualifying contribution or the making of a qualifying expenditure requiring the formation of a committee;" statements to the press including statements that a person accepted contributions are not included in the definitions of "contribution" and "expenditure" (ECF No. 56 at PageID.342-343).

Plaintiff responds that he seeks prospective declaratory and injunctive relief; but Plaintiff does not allege how Defendant Secretary of State has used or will use the definitions in Mich. Comp. Laws §§ 169.204(1) and 169.206(1) against Plaintiff based on his alleged "false statements" to the press (ECF No. 58 at PageID.373-374). Therefore, the Court grants the motion to dismiss as to Count IV.

*Count V – Defendant Secretary of State has Arbitrarily and Discriminatorily Enforced the*

---

[2] Plaintiff agrees to dismiss the facial constitutional challenge under this count (ECF No. 58 at PageID.373).

*Michigan Campaign Finance Act against Plaintiff because Mich. Comp. Laws §§ 169.204(1) and 169.206(1) are Unconstitutionally Void for Vagueness*

The Court will dismiss Count V.

The Complaint states that the vague provisions of the Michigan Campaign Finance Act misled Plaintiff into thinking his conduct was not proscribed and Defendant Secretary of State is using her discretion to arbitrarily and discriminatorily enforce the Michigan Campaign Finance Act (ECF No. 21 at 117-118).

For similar reasons, as stated above, this count must be dismissed because Plaintiff fails to allege how Michigan Campaign Finance Act and the definitions of "contribution" or "expenditure" are vague in their proscription and will be used against him based on his alleged false statements to the press (ECF No. 56 at PageID.344).

A plain meaning reading of Mich. Comp. Laws §§ 169.204(1) and 169.206(1) reveals these are definition sections. Their "prohibitions are not clearly defined" as Plaintiff alleges, because these sections do not contain prohibitions or prohibitions on false statements to the press as Defendant Secretary of State notes (*id.* at PageID.344-345; ECF No. 59 at PageID.393). *See Green Party of Tennessee v. Hargett*, 700 F.3d 816, 825 (6th Cir. 2012). The Court, therefore, grants the motion to dismiss as to Count V.

*Count VI – State Law Claim that Defendant Morrow Defamed Plaintiff*

The Court will dismiss Count VI.

A defamation claim under Michigan law must be filed within one year from the date when the alleged defamatory statement was made. *Mitan v. Campbell*, 706 N.W.2d 420, 422 (Mich. 2005); Mich. Comp. Laws Ann. § 600.5805(11). Plaintiff pleads discrete alleged defamatory statements: (1) in May 2019, Defendant Morrow falsely accused Plaintiff of committing a crime

11

in a news article; (2) in September 2019, Defendant Morrow accused Plaintiff of committing a crime and told patrons in a Detroit bar that he was a "fraud;" (3) sometime in June/July 2020, Defendant Morrow told Wayne County Prosecutor and other appointees in her office that Plaintiff violated the Michigan Campaign Finance Act (ECF No. 21 at PageID.119-124). The first two of these alleged defamatory events occurred more than a year before they were raised and are time-barred as Defendant Morrow notes (ECF No. 50 at PageID.210; ECF No. 53 at PageID.305-306). *See Grist v. Upjohn Co.*, 134 N.W.2d 358, 363 (1965) ("each act of slander constitutes a separate cause of action and the statute of limitations commences to run from the date of each such utterance"); *Redmond v. Heller*, 957 N.W.2d 357, 369 (Mich. Ct. App. 2020).

The third defamatory claim must also be dismissed because Defendant has failed to plead a defamation claim with particularity. *Vaysman v. Shane*, No. 287398, 2009 WL 3837357, at *4 (Mich. Ct. App. Nov. 17, 2009) (citing *Ledl v. Quick Pik Food Stores, Inc.,* 349 N.W.2d 529 (1984)). As Defendant Morrow notes, plaintiff has failed to identify the particular defamatory words about which the plaintiff complains or where, when, and to whom the publication was made (ECF No. 53 at PageID.309-311). *Vaysman*, 2009 WL 3837357, at *4. Even assuming the claim was sufficiently pled, an absolute privilege would still apply to Defendant Morrow's alleged statements to enforcement officers to initiate an investigation; and those alleged statements are not actionable (ECF No. 50 at PageID.211). *Id.* at *6; *Eddington v. Torrez*, 874 N.W.2d 394, 397 (Mich. Ct. App. 2015); *Brovins v. Guinan*, No. 349861, 2021 WL 1589573, at *5 (Mich. Ct. App. Apr. 22, 2021), *appeal denied*, 965 N.W.2d 518 (Mich. 2021), and *cert. denied sub nom.* The Court grants the motion to dismiss as to Count VI.

### III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant Morrow's Motion to Dismiss (ECF No. 49) is GRANTED.

**IT IS FURTHER ORDERED** that Defendant Secretary of State's Motion to Dismiss (ECF No. 55) is GRANTED.

**IT IS FURTHER ORDERED** that Plaintiff's Second Amended Complaint (ECF No. 21) is DISMISSED.

Because this Opinion and Order resolve all pending claims in this matter, a corresponding Judgment will issue.  *See* FED. R. CIV. P. 58.


Dated:  March 11, 2022                                          /s/ Janet T. Neff
                                                                                    JANET T. NEFF
                                                                                    United States District Judge